## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., *et al.*, | Case No. 16-11626 (CTG) |
| Reorganized Debtors. | |
| CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC, | Adv. Proc. No. 18-50416 (CTG) |
| Plaintiff/Counterclaim-Defendant, | **Related Docket Nos. 92, 103** |
| v. | |
| MIRANDA MINERAL RESOURCES, LLC and MESABI METALLICS COMPANY LLC, | |
| Defendants/Counterclaim-Plaintiffs. | |

## <u>MEMORANDUM OPINION</u>

This adversary proceeding is a dispute over which of two parties should be permitted to mine land in northern Minnesota.[1]  On the merits, Minnesota Statutes, Chapter 560 provides that when a plaintiff "in an action under this chapter owns one-half or more of the mineral land, the court must make an order allowing the complainant to enter on and mine the land to produce from it the minerals, mineral

---

[1] The two parties that assert rights to the lands are plaintiff Cleveland-Cliffs Minnesota Land Development LLC (referred to, as are its various affiliates, as "Cliffs") and defendant Miranda Mineral Resources, LLC (referred to as "Miranda Mineral").  Miranda Mineral is an affiliate of defendant Mesabi Metallics Company (which is referred to "Mesabi", and together with Miranda Mineral, as the "Mesabi Parties").

ores, coal, clay, sand, gravel, or peat, that may be on or in the land."[2]  But in this case, each of the parties seeking to mine the land holds an interest of exactly 50 percent. And both claim that they want to mine the land.  So which party should be entitled to do so?  That is an interesting question of Minnesota state law, and one that both parties now agree should be decided by the Minnesota courts.  All of which gives rise to a fairly obvious question: what are we doing *here*?

The answer to that question is more complicated, and requires, for context, some understanding of the rather epic battle between Cliffs (a leading steel manufacturer) and Mesabi (the reorganized debtor in this bankruptcy case, which has been seeking to compete with Cliffs by mining iron ore pellets on Minnesota's Mesabi Range).  The principal battleground for that dispute is a separate adversary proceeding that was filed in this Court in 2017, involving (among other things) antitrust and business tort claims.

This lawsuit was originally filed by Cliffs in a Minnesota state court in 2018, soon after it acquired its 50 percent interest in the land from Glacier Park.[3]  After Miranda Mineral acquired the other 50 percent interest, the Mesabi Parties removed the case to federal court in Minnesota on the ground that it was related to the *Essar Steel Minnesota* bankruptcy case pending in this Court.  On that basis, the Minnesota

---

[2] Minn. Stat. § 560.03(1).

[3] Glacier Park Iron Ore Properties LLC is referred to as "Glacier Park."

2

district court transferred the case here.[4]  The parties then agreed to an informal stay of this case while the antitrust dispute mentioned above proceeded in this Court.

There were two legal reasons and one practical one why it may have made sense to stay this action at that time.  As to the legal issues, *first*, the Mesabi Parties took the position that Cliffs had no right at all to the 50 percent interest it claimed in the land at issue.  Before the bankruptcy, Mesabi had leased this 50 percent interest in the land from Glacier Park.  Mesabi argued that it had validly assumed that lease in the bankruptcy case.  Glacier Park, on the other hand, took the position that Mesabi's lease had terminated.  On that basis, Glacier Park conveyed its 50 percent interest in that land to Cliffs.  If Mesabi were correct about its lease having been validly assumed, the Mesabi Parties (following their acquisition of the other 50 percent interest) would have the right to mine 100 percent of the land, and there would be no state-law dispute to be resolved.

*Second*, even if Mesabi had failed to assume the lease in the bankruptcy case, it argued that Cliffs' acquisition of its 50 percent interest in the parcels of land at issue was anticompetitive and should thus be set aside as a remedy in the antitrust action.

The practical reason for a stay was that back in 2018, Mesabi was quite far from having raised the financing necessary to begin mining work on the land even if it had the legal right to do so.  For those reasons, the Court appreciates that the

---

[4] *In re Essar Steel Minnesota LLC and ESML Holdings Inc., et al.*, Bankr. D. Del. No. 16-11626.  Matters on the docket in this main bankruptcy case are cited as "Main Case D.I. __."

parties sensibly reached the decision to put this case on the backburner while those other issues were addressed in the antitrust case.

The first legal issue was resolved within a few months of the filing of this lawsuit. In June 2018, Judge Shannon (who was then presiding over these cases) concluded that Mesabi had not validly assumed the leases in question. As such, Cliffs had properly acquired its interest in the land from Glacier Park.

The second legal issue is still pending. After years of litigation, in August 2024 this Court issued a decision on cross motions for summary judgment in which those motions were each granted in part and denied in part.[5] As relevant here, this Court's decision on summary judgment was that genuine disputes of material fact precluded the entry of summary judgment on the question whether Cliffs' acquisition of its 50 percent interest in the land in question was anticompetitive. Last week, the district court withdrew the reference over that matter.[6] So the antitrust dispute is now in the hands of the district court – a court that has an exceptionally busy docket.

Then, in November 2024, the Mesabi Parties filed a motion for summary judgment in this Section 560 action.[7] The parties disputed the appropriate briefing

---

[5] *Mesabi Metallics Co. v. Cleveland-Cliffs Inc., et al.*, Bankr. D. Del. No. 17-51210, D.I. 1070 (Aug. 27, 2024). That Memorandum Opinion was originally filed under seal to give the parties the opportunity to argue that any part of it should be redacted before being filed publicly. The Court ultimately rejected the argument that portions of the Memorandum Opinion should be redacted and filed a public version of the Memorandum Opinion on September 4, 2024. *Mesabi Metallics Co.*, D.I. 1074 (Sept. 4, 2024). That Memorandum Opinion is referred to as the "Antitrust Summary Judgment Opinion."

[6] *See In re Essar Steel Minnesota, LLC*, D. Del. No. 24-mc-00531 (GBW), D.I. 10 (Feb. 14, 2025) (memorandum opinion denying motion for interlocutory appeal and granting motion to withdraw the reference).

[7] D.I. 67.

schedule on that motion, with the Mesabi Parties contending that they were now prepared to begin work on the land, such that this Court should deny Cliffs' request for an eight-week extension of time to oppose their summary judgment motion.[8]  On a hearing devoted to the question of scheduling, the Court raised the question whether these disputes involving unresolved questions of Minnesota law even belong in this Court.  At the conclusion of that hearing, the Court set a schedule under which the parties would have the opportunity to file motions to remand, which, along with the summary judgment motions, would be heard in early February.[9]

Cliffs then filed a motion asking this Court to stay the Section 560 action pending the resolution of the antitrust case in the district court, or, in the alternative, to certify four questions of Minnesota state law to the Minnesota Supreme Court.[10]  The Mesabi Parties filed a motion to abstain and remand back to the trial court in Minnesota from which the case had been removed.[11]  The parties informally agreed that the Court should hear argument on those motions, and hold the pending summary judgment motion in abeyance.

For the reasons described below, this Court will abstain from hearing the case and remand the matter to the Minnesota state court.  No party is still suggesting that this Court go forward with this claim arising under Minnesota law that is principally between non-debtor parties.  The strongest argument against remand is Cliffs'

---

[8] D.I. 76.

[9] D.I. 91.

[10] D.I. 102.

[11] D.I. 103.

contention that the resolution of the Section 560 action may be affected by the outcome of the antitrust case and that it makes sense simply to stay this lawsuit pending the resolution of that one.  But even the question whether it makes sense to proceed in the face of that uncertainty or await a resolution of the antitrust action requires a judgment about the urgency of ensuring that the land in Minnesota be put to productive use.  And for the same reasons that the merits of the Section 560 action are better resolved by the Minnesota courts, so too is the question whether that action should proceed now or await a decision from the district court in the antitrust case.

## Factual and Procedural Background

Essar Steel, a subsidiary of the multinational conglomerate Essar Global, was formed to develop and operate an iron ore pellet production facility in the western Mesabi range in northern Minnesota.[12]  Essar Steel filed for bankruptcy in this Court in July 2016.[13]  The debtors confirmed a plan of reorganization in June 2017 which became effective on December 22, 2017.[14]  Chippewa Capital Partners acquired Essar Steel under the plan.  The reorganized debtor was renamed as Mesabi.  Essar Global subsequently acquired Chippewa Capital Partners and is therefore again the owner of Mesabi.[15]

---

[12] Antitrust Summary Judgment Opinion at 3.

[13] Main Case D.I. 1.

[14] Main Case D.I. 1025, 1398.

[15] Antitrust Summary Judgment Opinion at 4, n.9.

This adversary proceeding involves 11 parcels of real property located in Itasca County, Minnesota.[16]  The dispute over these 11 parcels is discussed in greater detail in the Antitrust Summary Judgment Opinion and will be repeated here only in summary fashion.  These 11 parcels were initially jointly owned by Glacier Park and Superior, each holding an undivided one-half interest as co-tenants.[17]

*The Glacier Park interests.*  As to the 50 percent interest originally held by Glacier Park, the story is as follows:  Before the bankruptcy filing, Mesabi had leased these parcels from Glacier Park.[18]  During the bankruptcy case, Mesabi sought to assume these leases.  Glacier Park objected to the assumption, and the parties ultimately entered a settlement agreement that provided that Mesabi would assume the leasehold interest when the plan became effective, *so long as* the plan became effective by October 31, 2017.[19]  The plan, however, did not become effective by the agreed date.  Glacier Park thereafter sold its interest in those 11 parcels to Cliffs in early December 2017.[20]

Mesabi challenges Cliffs' ownership of that 50 percent interest on two grounds. *First*, it argues that the plan not having become effective by the October 31, 2017 deadline did not prevent it from assuming the lease.  Rather, on its view, its failure to consummate its plan by the deadline meant that the lease was breached but not

---

[16] D.I. 104 at 5.

[17] *Id*. at 5-6.  Superior Mineral Resources, LLC is referred to as "Superior."

[18] D.I. 104 at 6.

[19] Antitrust Summary Judgment Opinion at 5.

[20] D.I. 68, Ex. 1-B.

terminated, and that the lease later was assumed when its plan ultimately did become effective in December 2017.

Several counts in the antitrust case asserted claims that were premised on the theory that Mesabi in fact had validly assumed the Glacier Park leases. Judge Shannon rejected those arguments in a thoughtful opinion issued in June 2018.[21] Because that decision dismissed some but not all of the counts in the antitrust case (which is now pending in the district court), the decision has not yet become final and appealable. That said, Judge Shannon's decision controls unless and until it is stayed or reversed, neither of which has happened. And at least in the view of the undersigned judge, there is little in Judge Shannon's reasoning with which one can reasonably take issue.

*Second*, Mesabi says that Cliffs' decision to acquire Glacier Park's interest in these parcels in December 2017 was itself anticompetitive. It argues that Cliffs acquired that interest not because it in fact intended to mine the land, but rather because these parcels were important to Mesabi's effort to compete with Cliffs, and that Cliffs bought Glacier Park's interest in these parcels simply to thwart Mesabi. This Court denied summary judgment on the merits of that claim.

*The Superior interests.* In the meantime, however, Cliffs filed this Section 560 action in Minnesota state court seeking an order granting it the right to mine the land it had just acquired from Glacier Park. It named Superior as the defendant,

---

[21] *See In re Essar Steel Minnesota LLC*, 590 B.R. 109, 113 (Bankr. D. Del. 2018).

which at that time owned the other 50 percent interest in the 11 parcels.[22]  Miranda, a wholly owned subsidiary of Mesabi, then acquired Superior's undivided one-half interest in March 2018.[23]  Following Miranda's acquisition of Superior's ownership interest, Cliffs amended its claim and added the Mesabi Parties as additional defendants.[24]

For what it is worth, Miranda's acquisition of Superior's interest in the parcels is the basis of a counterclaim that Cliffs asserted against Mesabi in the antitrust lawsuit.  There, Cliffs argues that Mesabi's acquisition of Superior's interest in the parcels tortiously interfered with its effort to acquire that same interest.  This Court granted partial summary judgment in Mesabi's favor on that count, concluding that the evidence would not support a finding that Mesabi's effort to acquire that Superior's land for itself was tortious.[25]

Once the Mesabi Parties were added as defendants in the state court Section 560 action, they removed it to the United States District Court for the District of Minnesota, whereupon it was referred to the Minnesota bankruptcy court on the ground that the basis for jurisdiction was its relation to this bankruptcy case.[26]  Mesabi then moved to transfer it to this Court.  Mesabi asserted that this was the appropriate forum for the instant case because this Court had already spent

---

[22] D.I 1-1 at 4-6 of 96.

[23] D.I. 1-2 at 10-12 of 100.

[24] *Id.*  While Miranda Mineral was the entity that acquired the interest in the 11 parcels, Miranda Mineral, in turn, leased its interest to its affiliate, Mesabi.

[25] Antitrust Summary Judgment Opinion at 87-93.

[26] D.I. 4.

considerable time becoming familiar with the facts of the main bankruptcy proceeding and the antitrust adversary proceeding, and this Section 560 action concerned issues that are central to both proceedings.[27]

Cliffs asked that the motion to transfer venue be stayed until the then-pending cross-motions for partial summary judgment in the antitrust case were resolved.[28] Those motions involved the question whether Mesabi had validly assumed Glacier Park's interest in the parcels notwithstanding the passage of the October 31, 2017 deadline for the Mesabi plan to become effective.  The court in Minnesota, however, transferred the case to this Court in April 2018.[29]

Cliffs filed a motion for abstention and remand in May 2018, asserting that this Section 560 action will be a "prime candidate for remand" after the Court rules on the parties' cross-motions for partial summary judgment in the antitrust adversary proceeding.  Cliffs argued that it would serve the interests of judicial economy for the Court to wait to decide the motion for remand until that time.[30] Cliffs, however, withdrew its motion for abstention and remand in August 2018.[31]

The Court held a status conference regarding this Section 560 action in October 2018.  Although Miranda had acquired Superior's interest in the land in March of that year, as of the date of the status conference, Superior was still named as a

---

[27] D.I. 4 at 2, 4.

[28] D.I. 12 at 3.

[29] D.I. 16.

[30] D.I. 24; D.I. 25 at 7-8.

[31] D.I. 37.

defendant in this action. Mesabi suggested that the Court wait until Superior's status was resolved before issuing a scheduling order.[32] The Court dismissed Superior from this case in December 2018 on the ground that it no longer held an ownership interest in the parcels at issue.[33] Since then, this action had been informally stayed by agreement of the parties until the Mesabi Parties moved for summary judgment in November 2024.[34]

After the Mesabi Parties sought summary judgment, Cliffs wrote to the Court asking for an extension of time to respond. The Mesabi Parties opposed that request, arguing that in light of its interest in promptly starting its work to mine the land, time was of the essence.[35] The Court held a status conference in November 2024 and raised the question whether this Court was the appropriate forum to resolve a novel question of Minnesota law.[36] In January 2025, Cliffs moved to stay this action pending resolution of the antitrust case, and in the alternative asked this Court to certify various questions of Minnesota law to the Minnesota Supreme Court.[37] At the same time, Mesabi moved this Court to abstain from hearing the case and to remand it to the Minnesota state court.[38] The Court heard oral argument on those motions on February 6, 2025.

---

[32] Oct. 31, 2018 Hr'g Tr. at 18-19.

[33] D.I. 51.

[34] D.I. 57 (status report).

[35] D.I. 72, 76.

[36] Nov. 25, 2025 Hr'g Tr. at 17.

[37] D.I. 92.

[38] D.I. 103.

## Jurisdiction

This action was transferred to this Court based on the existence of "related to" jurisdiction under 28 U.S.C. § 1334(b). Courts may exercise their discretion to abstain from hearing a "related to" proceeding pursuant to 28 U.S.C. § 1334(c)(1) and remand it pursuant to 28 U.S.C. § 1452(b).

## Analysis

Permissive abstention may be appropriate in "the interest of justice, or in the interest of comity with State courts or respect for State law."[39] Abstention, however is "the exception, not the rule," and therefore, should rarely be invoked.[40] Courts in this district have developed a list of 12 factors relevant to the evaluation of a request for discretionary abstention:

> (1) the effect or lack thereof on the efficient administration of the estate
> (2) the extent to which state law issues predominate over bankruptcy issues
> (3) the difficulty or unsettled nature of applicable state law
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court
> (5) the jurisdictional basis, if any, other than section 1334
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case
> (7) the substance rather than the form of an asserted "core" proceeding
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court
> (9) the burden of the court's docket
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties

---

[39] 28 U.S.C. § 1334(c)(1).

[40] *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d. Cir. 1992) (internal quotation and citation omitted).

(11) the existence of a right to a jury trial, and

(12) the presence of non-debtor parties.[41]

Courts apply these factors flexibly.   No factor is determinative; instead, all factors are weighed for their relevance and importance in light of the particular circumstances of each case.[42]   Permissive abstention, when deemed appropriate, is grounds for granting a remand pursuant to 28 U.S.C. § 1452(b).

## I.    The relevant factors counsel in favor of permissive abstention.

Mesabi asserts that each of the factors for permissive abstention weighs in favor of abstention and remand.   In particular, Mesabi argues that novel and unsettled questions of state law predominate, and the circumstances of this case have significantly changed since this action was initially removed and transferred in April 2018 such that this action can be severed from the main case.[43]

Cliffs opposes the motion to abstain and remand in favor of (1) staying the case until a final order is entered in the antitrust adversary proceeding, or (2) if the court chooses to abstain, to certify unsettled questions of law to the Minnesota Supreme Court.   Cliffs argues that the factors do not weigh in favor of abstention and remand; instead, abstention creates risk of inconsistent judgments and would disserve the interests of judicial efficiency and economy.[44]

---

[41] *In re LaRoche Industries, Inc.,* 312 B.R. 249, 253-254 (Bankr. D. Del 2004); *In re BSA,* 2024 Bankr. LEXIS 635 at *94-95 (Bankr. D. Del. 2024); *In re Imerys Talc Am., Inc.,* 2019 WL 3253366, at *7 (D. Del. July 19, 2019); *Tonopah Solar Energy,* 2022 WL 958117, at *9 (citing *In re Continental Airlines, Inc.,* 156 B.R. 441, 443 (Bankr. D. Del. 1993)).

[42] *Imerys Talc Am., Inc.,* 2019 WL 3253366, at *7.

[43] D.I. 104 at 1-2.

[44] D.I. 108 at 12-18.

The Court finds that the relevant factors weigh in favor of abstention. While the Court has considered all 12 of the factors, those that figure most prominently in its analysis are the following:

- Courts consider whether abstaining will have an effect on the administration of the bankruptcy estate.[45] Here, any such effect is *de minimis*. The debtors' plan was confirmed and became effective in 2017.[46] While the reorganized debtor (Mesabi) is a party to this dispute, its rights are wholly derivative of non-debtor Miranda Minerals. So, this is at bottom a dispute about the ownership of property between two non-debtor parties in a bankruptcy case that was confirmed more than seven years ago.[47] This factor weighs strongly favor of abstention. The presence of non-debtor parties is itself viewed as a separate factor that counsels in favor of abstention.[48] And for the same reason, the degree of relatedness to or remoteness from the main case (which is yet another factor) similarly counsels in favor of abstention.[49]

- State law issues predominate over bankruptcy issues.[50] The parties agree that this case involves questions of Minnesota law.[51] Moreover, the issues of state

---

[45] *LaRoche,* 312 B.R. at 254.

[46] Main Case D.I. 1025, 1398.

[47] *See LaRoche,* 312 B.R. at 254; *In re Integrated Health Services, Inc.*, 291 B.R. 615, 620 (Bankr. D. Del. 2003).

[48] *LaRoche,* 312 B.R. at 255.

[49] *In re Fruit of the Loom, Inc.*, 407 B.R. 593, 599 (Bankr. D. Del. 2009).

[50] *LaRoche,* 312 B.R. at 254.

[51] D.I. 104 at 11; D.I. 93 at 12-15.

law are complex and unsettled.[52]  As courts have observed before, "abstention

is best when novel or unsettled issues of state law are involved."[53]

- This is a non-core matter.  It is a dispute arising under state law about land

  ownership.  It implicates no issue of federal bankruptcy law.  Such a matter

  must necessarily be non-core.[54]

- There is no reason to believe that any party has engaged in forum shopping.[55]

  Mesabi's motion to remand came after the Court asked the following question

  during the November 2024 hearing:

  The question I have is a [28 U.S.C. §] 1452 question about when it's
  appropriate to remand a case that is within the subject-matter
  jurisdiction because it's a matter of State law, and in deference to [the
  state courts], those considerations outweigh any logical relationship to
  the Bankruptcy Court[.]  [In that event, it would] make[] more sense to
  remand and allow a [state court] to do the work of [state courts].

  …

  The notion that I should be racing to resolve this question of Minnesota
  law doesn't move me terribly. I've got serious questions about whether
  it's appropriate for me to hear this at all.[56]

                              *  *  *

---

[52] *LaRoche,* 312 B.R. at 254.

[53] *Id.*

[54] *See SEC v. Jarkesy*, 603 U.S. 109, 112 (2024) (explaining that matters that are
"quintessentially suits at common law" cannot be core matters) (quoting *Granfinanciera, S.A.
v. Nordberg*, 492 U.S. 33, 50 (1989)).  The Court is aware that when the Mesabi Parties
removed this action, they took the position that this was a core matter.  That assertion was
incorrect.

[55] *LaRoche Industries,* 312 B.R. at 254.

[56] Nov. 25, 2024 Hr'g Tr. at 16-17.

In sum, a consideration of the factors that courts typically consider in whether to grant a motion for permissive abstention weigh strongly in favor of abstaining here.

## II.    This Court has authority to remand directly to Minnesota state court.

Under 28 U.S.C. § 1452(b), "the court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."[57] Permissive abstention is made in "the interest of justice, or in the interest of comity with State courts or respect for State law."[58]  A remand based on such abstention, *i.e.*, here, in the interest of comity with the Minnesota state courts so they can decide novel issues of Minnesota state law, falls under the "any equitable ground" provision of § 1452(b).[59]

In opposition to the motion to remand (and in support of its own motion to stay), Cliffs argues that remand runs the risk of inconsistent rulings.  Its worry stems from the fact that the antitrust action remains pending and the prior rulings in that case have not become final and nonappealable.  Accordingly, Cliffs is concerned that Mesabi will argue before the Minnesota state court that Judge Shannon was wrong to find that its lease on Glacier Park's 50 percent interest in the property was rejected when it failed to meet the October 31, 2017 deadline.  It also expresses concern that Mesabi will contend that Cliffs' ownership of that interest should be ignored on the ground that its acquisition was anticompetitive, an assertion that it is now contesting before the district court.

---

[57] 28 U.S.C. § 1452(b).

[58] *Id.* § 1334(c)(1).

[59] *Allied Signal Recovery Trust v. Allied Signal, Inc.,* 298 F.3d 263, 269 (3d Cir. 2002).

16

The Court does understand these concerns and agrees that all things being equal, they might counsel in favor of staying the Section 560 action until the disputes described above were definitively resolved.  But everything else is not equal.  A principal concern that animates this Court's judgment that it should abstain from the case is that it involves a novel question of Minnesota law.  Principles of comity and respect for the role of the Minnesota courts as the arbiters of close questions of Minnesota law thus counsel strongly in favor of sending this dispute back to the Minnesota courts.  And it is clear from even a cursory review of Section 560 that one of the goals of the statute is ensuring that the lands in the state be put to appropriate and productive use.  As a result, deciding to leave this case on ice for an indefinite period of time (until a decision in the antitrust action becomes final and nonappealable) is itself to make a decision to subordinate that interest of Minnesota law.

None of that is to minimize the fair arguments that Cliffs makes about why it may be appropriate to stay this case.  Indeed, the reason this Court has spilled as much ink as it has on an otherwise unreviewable decision to remand is because the Court believes that this context may be helpful to a Minnesota state court in deciding whether it is appropriate to stay the Section 560 action during the pendency of the antitrust case.  At the end of the day, this Court's judgment is that the issues of whether and how to deal with the Section 560 action, in light of the pendency of the antitrust case, are issues that are most appropriately resolved by the judge presiding over the Section 560 action, in the exercise of *that* court's discretion.

The Court rejects Cliffs' alternative argument for certification to the Minnesota Supreme Court for similar reasons. While the Section 560 action does raise novel questions of Minnesota law, this Court does not see any reason why they should not properly be raised through the Minnesota court system in the ordinary course. Certification is an appropriate procedure to follow when a case that properly belongs in a bankruptcy court (because, for example, it arises under the Bankruptcy Code) happens to raise novel questions of state law. But this is not a case that has any strong connection to the bankruptcy case itself. For the reasons described above, it arises under state law, and its connection to the main bankruptcy case is rather attenuated. The Court sees no reason to adopt the complex solution of certification when the simple one of remand is readily available.

## III.    The doctrine of judicial estoppel is not applicable.

Cliffs also argues that Mesabi should be estopped from seeking remand on the ground that it removed the case to federal court in the first instance. And while there may be something to that point, Mesabi could equally contend that Cliffs should be estopped from opposing remand when Cliffs itself filed such a motion earlier in the case.

For those reasons, this Court is not inclined to put much weight on the positions the parties took earlier in the case. The Court's judgment is that principles of comity and respect for the proper role of the Minnesota courts as the ultimate arbiters of Minnesota law counsel in favor of remanding this case to the Minnesota court system. To be sure, each of the parties each took positions at earlier stages in the case that they believed served their own interests. That, however, is a dog-bites-

18

man kind of story and does not change this Court's determination that these matters are most appropriately resolved by the Minnesota courts.

## Conclusion

For the foregoing reasons, the motion for abstention and remand will be granted and the motion to stay this action, or in the alternative, to certify questions of law will be denied.  The parties are directed to settle an appropriate order.

Dated: February 19, 2025

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE